UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DENNIS M.,

               Plaintiff,

        v.                                                    **DECISION AND ORDER**
                                                                          20-CV-880S

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

_____

      1.     Plaintiff Dennis M.[1] challenges the determination of an Administrative Law Judge ("ALJ") that he is not disabled within the meaning of the Social Security Act ("the Act").  Plaintiff alleges that he has been disabled since July 17, 2017, due to a history of heart attack, hypertension, and bilateral carpal tunnel syndrome.  Plaintiff maintains that he is entitled to disability benefits because his impairments render him unable to work.

      2.     Plaintiff filed an application for disability benefits on May 12, 2017.  After denial at the agency level, Plaintiff proceeded to a hearing, which took place before ALJ Bryce Baird on July 18, 2019.  At the time of the hearing, Plaintiff was 60 years old, with at least a high school education, and had past relevant work as a corrections officer.  The ALJ considered the case *de novo* and, on February 11, 2020, issued a written decision denying Plaintiff's application for benefits.   The Appeals Council thereafter denied Plaintiff's request for review on May 13, 2020.

---

[1] In accordance with this district's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order identifies the plaintiff by first name and last initial only.

3.      Plaintiff filed the current action on July 13, 2020, challenging the Commissioner's final decision.[2]  After filing of the administrative record, the parties cross-moved for judgment on the pleadings under Rule 12 (c) of the Federal Rules of Civil Procedure, with briefing concluded on March 1, 2021.  (Docket Nos. 10-12.)  The Clerk of Court thereafter assigned the case here on October 6, 2021, at which time this Court took the motions under advisement without oral argument.  (Docket No. 14.)  For the following reasons, Plaintiff's motion will be denied, and Defendant's motion will be granted.

4.      A party is entitled to judgment on the pleadings under Rule 12 (c) "only if it has established that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law."  Juster Assocs. v. City of Rutland, 901 F.2d 266, 269 (2d Cir. 1990) (internal quotation marks omitted).  In social security appeals, the district court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing a decision of the Commissioner of Social Security, with or without remanding the case for a rehearing."  42 U.S.C. § 405 (g).

5.      A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  See 42 U.S.C. § 405 (g); Wagner v. Sec'y of Health & Hum. Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Instead, the court's inquiry is limited to two issues: (1) whether the Commissioner applied the correct legal standards, and (2) whether the Commissioner's factual findings are supported by substantial evidence.  See Greek v. Colvin, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam); see also Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the

---

[2] The ALJ's February 11, 2020 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence.").  In conducting this inquiry, the court cannot substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Hum. Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).  Consequently, if the Commissioner's determination is free from legal error and supported by substantial evidence, the court must affirm.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).

6.     As it relates to the legal-error inquiry, the court must determine whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act."  Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotations and citations omitted).  "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations."  Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (citation omitted).  This inquiry is completed first because "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."  Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

7.     As it relates to the substantial-evidence inquiry, the standard is not high.  See Biestek v. Berryhill, __ U.S. __, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).  The United States Supreme Court defines substantial evidence as only "more than a mere

scintilla," <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971), and has clarified that "[i]t means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" <u>Biestek</u>, 139 S. Ct. at 1154 (quoting <u>Consol. Edison Co. v. NLRB</u>, 305 U.S 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)).   Because the Commissioner's factual findings are conclusive if supported by substantial evidence, <u>see</u> 42 U.S.C. § 405 (g), review is properly focused on whether substantial evidence supports the Commissioner's determination, not whether substantial evidence might also support the plaintiff's position.   See <u>Zacharopoulos v. Saul</u>, 516 F. Supp. 3d 211, 220 (E.D.N.Y. 2021) (noting that "the relevant question is not whether substantial evidence supports plaintiff's position, but whether 'substantial evidence supports *the ALJ's decision*'") (quoting <u>Bonet ex rel. T.B. v. Colvin</u>, 523 F. App'x 58, 59 (2d Cir. 2013) (emphasis in original)).   This is "a very deferential standard of review—even more so than the 'clearly erroneous' standard." <u>Brault v. Soc. Sec. Admin., Comm'r</u>, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (citing <u>Dickinson v. Zurko</u>, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999)).

8.     "To determine on appeal whether [the Commissioner's] findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." <u>Williams on Behalf of Williams v. Bowen</u>, 859 F.2d 255, 258 (2d Cir. 1988).   If supported by substantial evidence, the Commissioner's factual findings must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." <u>Rosado v. Sullivan</u>, 805

F. Supp. 147, 153 (S.D.N.Y. 1992).  Similarly, where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).  In short, the substantial-evidence standard requires that once an ALJ finds facts, those facts can be rejected "'only if a reasonable factfinder would *have to conclude otherwise*.'"  Brault, 683 F.3d at 448 (quoting Warren v. Shalala, 29 F.3d 1287, 1290 (8th Cir. 1994) (emphasis in original)).

9.     The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. § 404.1520.  The Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

10.     The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits her physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider her disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work.  Finally, if the claimant is unable to perform her past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original);

see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

11.     The claimant has the burden of proof on the first four steps; the Commissioner has the burden of proof on the fifth step.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The fifth step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423 (d)(2)(A); 20 C.F.R. § 404.1520 (f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

12.     In this case, the ALJ found the following with regard to the five-step process set forth above: (1) Plaintiff had not engaged in substantial gainful activity since July 17, 2017 (amended onset date) (R. at 12-13); (2) Plaintiff's history of heart attack, bilateral carpal tunnel syndrome, and hypertension were severe impairments within the meaning of the Act (R. at 13); (3) Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. at 13-14); (4) Plaintiff retained the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567 (c), with certain exceptions[3]

---

[3] The ALJ found that Plaintiff could perform medium work except that he "can lift, carry, push and pull 50 pounds occasionally and lift, carry, push and pull 25 [pounds] frequently, and sit, stand or walk for up to six hours in an eight-hour workday; . . . can only occasionally use hand controls with either the left or right hand; . . . can occasionally climb ramps or stairs but never climb ladders, ropes or scaffolds, never crawl and can frequently stoop, kneel and crouch; . . . can frequently handle, finger and feel objects with his left and right hand; the claimant can never be exposed to excessive cold, heat, moisture/humidity, and have no concentrated exposure to pulmonary irritants such as odors, fumes, dusts, gasses and poor ventilation." (R. at 14.)

(R. at 14-20); (5) Plaintiff was able to perform his past relevant work as a corrections officer (R. at 20-21); and, alternatively (6) Plaintiff could perform jobs that exist in significant number in the national economy (R. at 21-22).   Accordingly, the ALJ determined that Plaintiff was not under a disability as defined by the Act from July 17, 2017, through February 11, 2020.  (R. at 11, 22.)

13.     Plaintiff challenges the ALJ's decision on two grounds.  First, he argues that the ALJ failed to properly develop the administrative record.  Second, he alleges that the ALJ's finding that he could frequently handle, finger, and feel is not supported by substantial evidence because it ignores his treating physician's determination that he lost 20% use of his hands.  In response, the Commissioner argues that the ALJ's decision is free from legal error and supported by substantial evidence and should therefore be affirmed.  This Court agrees with the Commissioner.

14.     Plaintiff initially argues that the ALJ failed to develop the evidentiary record in two ways.  First, he claims that the ALJ failed to secure evidence relating to his heart condition, both by failing to accept documents into the record that were brought to the hearing and by failing to enforce a subpoena later issued for those same records.  Second, he argues that the ALJ failed to update the record with current evidence from his primary care physician and records from Buffalo General Hospital.  Having carefully examined the hearing transcript, this Court is not persuaded that the ALJ failed to meet his obligations.

15.     "Before determining whether the Commissioner's conclusions are supported by substantial evidence, a court must first be satisfied that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent

purposes of the [Social Security] Act."  Russ v. Comm'r of Soc. Sec., 20-CV-6389 (RWL), 2022 WL 278657, at *7 (S.D.N.Y. Jan. 31, 2022) (alterations in original; quotation marks omitted) (quoting Moran, 569 F.3d at 112).  Whether an ALJ fully satisfied his or her duty to develop the administrative record is therefore a threshold issue.  See Russ, 2022 WL 278657, at *7; Campbell v. Comm'r of Soc. Sec., No. 19-CV-4516, 2020 WL 4581776, at *14 (S.D.N.Y. Aug. 10, 2020) ("Before determining whether the Commissioner's final decision is supported by substantial evidence under 42 U.S.C. § 405 (g), the court must first be satisfied that the ALJ provided plaintiff with a full hearing under the Secretary's regulations and also fully and completely developed the administrative record.") (internal quotation marks and citations omitted)).

16.     An "ALJ, unlike a judge in a trial, must [him]self affirmatively develop the record" in light of "the essentially non-adversarial nature of a benefits proceeding."  Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) (citing Echevarria v. Sec'y of HHS, 685 F.2d 751, 755 (2d Cir. 1982)); see also Moran, 569 F.3d a 112.  This duty arises from the Commissioner's regulatory obligations to develop a complete medical record before making a disability determination, see 20 C.F.R. § 404.1512(d)-(f), and exists even when, as here, the claimant is represented by counsel, see Pratts, 94 F.3d at 37.  This obligation "encompasses not only the duty to obtain a claimant's medical records and reports but also the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity."  Pena v. Astrue, No. 07-CV-11099 (GWG), 2008 WL 5111317, at *8 (S.D.N.Y. Dec. 3, 2008).  Ultimately, the ALJ's duty is to "investigate and develop the facts and develop the

arguments both for and against the granting of benefits." <u>Vincent v. Comm'r of Soc. Sec.</u>, 651 F.3d 299, 305 (2d Cir. 2011).

17.    But the ALJ's duty is not without limits. <u>See</u> <u>Eugene F. v. Comm'r of Soc. Sec.</u>, 1:20-cv-04356-GRJ, 2022 WL 355918, at *8 (S.D.N.Y. Feb. 7, 2022) (noting that "the ALJ's obligation to assemble the claimant's medical records, although robust, is not unlimited." (citations and quotations omitted)). First, no further development of the record is necessary "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history." <u>Rosa v. Callahan</u>, 168 F.3d at 79 n.5; <u>see also</u> <u>Johnson v. Comm'r of Soc. Sec.</u>, 16-CV-831T, 2018 WL 1428251, at *5 (W.D.N.Y. Mar. 22, 2018) ("Where the record evidence is sufficient for the ALJ to make a disability determination, the ALJ is not obligated to seek further medical records."). In such a situation, the overriding inquiry is whether the evidentiary record before the ALJ was "robust enough to enable a meaningful assessment of the particular conditions on which the petitioner claim[ed] disability." <u>Sanchez v. Colvin</u>, No. 13-CV-6303 (PAE), 2015 WL 736102, at *7 (S.D.N.Y. Feb. 20, 2015); <u>accord</u> <u>Walsh v. Colvin</u>, No. 3:13CV00687 (JAM), 2016 WL 1626817, at *2 (D. Conn. Apr. 25, 2016) (finding that the ALJ's duty to develop the records is triggered "only if the evidence before [the ALJ] is inadequate to determine whether the plaintiff is disabled.").

18.    Second, the ALJ must make only *reasonable* efforts to develop the claimant's complete medical history for at least the 12 months preceding the month in which the application is filed. <u>See</u> 42 U.S.C. § 423 (d)(5)(B); 20 C.F.R. § 404.1512 (b)(1) ("We will make every reasonable effort to help you get medical evidence from your own medical sources and entities that maintain your medical sources' evidence when you give

us permission to request the reports.").  "Reasonable effort" under the regulation means making an initial request and one follow-up request.  See 20 C.F.R. § 404.1512 (b)(1)(i). Issuance of subpoenas is discretionary, as is the decision whether to enforce a subpoena once issued.  See Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998); Johnson v. Comm'r of Soc. Sec., 19-cv-1576 (KAM), 2021 WL 308284, at *5 (E.D.N.Y. Jan. 29, 2021) ("An ALJ has discretionary power in issuing and enforcing subpoenas."); 20 C.F.R. § 404.950 (d)(1).

19.    Turning to the relevant facts, Plaintiff's hearing before the ALJ was originally scheduled for January 23, 2019, but had to be adjourned to July 18, 2019, due to inclement weather.  (R at 42.)  In January, Plaintiff's only claimed severe impairments were hypertension and bilateral carpal tunnel syndrome.  (R. at 48, 49.)  Plaintiff made no claim based on his history of heart attack, though his lawyer at the time[4] identified records from the Heartbeat Center of Western New York as outstanding.  (R. at 303.) Despite the significant adjournment, counsel never submitted the Heartbeat Center records ahead of the rescheduled hearing.

20.    When counsel appeared at the July 18, 2019 hearing with Plaintiff, she could not explain why Plaintiff's cardiac condition was not previously presented but sought to orally amend the application to include Plaintiff's cardiac condition post his July 2017 heart attack.  (R. at 48-51, 56.)  Counsel also conceded that the Heartbeat Center records referenced six months earlier were inexplicitly never submitted, but requested that hard copies of those records, which Plaintiff had with him, be belatedly accepted into the

---

[4] Plaintiff was represented in the proceedings before the ALJ by two attorneys from Premier Disability Services, LLC, which is a nationwide social security disability advocacy firm.  Plaintiff has different counsel on this appeal.

record.   (R. at 43, 44.)   Counsel identified these records as "most critical" and characterized them as "show[ing] the demonstration of change concerning [Plaintiff's] heart condition," despite later admitting that she had not reviewed them.  (R. at 42, 43, 55.)  Although clearly displeased with the manner in which counsel and her organization were handling Plaintiff's representation, the ALJ agreed to accept the documents into the record and afforded counsel 14 days to file them electronically.  (R. at 44-47, 70, 89.)  The ALJ also directed counsel to submit updated records from Plaintiff's primary physician, Xinyue Liu-Chen, M.D., and from Buffalo General Hospital.  (R. at 68-70, 73-74, 89.)

21.     Despite the ALJ's granting of her request to do so, Plaintiff's counsel never electronically submitted the Heartbeat Center records that Plaintiff brought to the hearing, nor did counsel timely obtain and submit new records from the Heartbeat Center, Dr. Liu-Chen, or Buffalo General Hospital.  Instead, counsel sent the ALJ a series of three post-hearing letters, each requesting a 14-day extension to obtain medical evidence from the Heartbeat Center.  (R. at 327-329.)

22.     Thereafter, counsel sent the ALJ a fourth letter, this one requesting that the ALJ issue a subpoena to the Heartbeat Center.  (R. at 330.)  In response to that request, the ALJ first issued a letter to the Heartbeat Center directing it to supply the requested records.  (R. at 330.)  When that letter proved unfruitful, the ALJ issued the requested subpoena, to which there was again no response.  (R. at 335-41.)  The ALJ then closed the record and decided the case on the evidence before him.  (R. at 10.)

23.     In considering Plaintiff's argument that the ALJ failed to properly develop the record, this Court finds that the "missing" documents must be divided into two categories, those in Plaintiff's possession—the Heartbeat Center records—and those

not—the records from Dr. Liu-Chen and Buffalo General Hospital.  The former implicates Plaintiff's burden of proof, the latter implicates the ALJ's duty to develop the record.  Cf. Greif v. Kijakazi, 20-CV3159 (EK), 2022 WL 280605, at *5-6 (E.D.N.Y. Jan. 21, 2022) (observing that difficulties arise in reconciling a plaintiff's burden of proof with the ALJ's obligation to develop the record).

24.     First, the Heartbeat Center records.  It is the claimant's burden to prove that he or she was disabled throughout the period for which benefits are sought.  See Lesterhuis v. Colvin, 805 F.3d 83, 87 (2d Cir. 2015); 20 C.F.R. § 404.1512 (a)(1).  To meet that burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423 (d)(1)(A).  Consistent with that burden of proof, the claimant has an ongoing duty to inform the agency about or submit all known evidence that relates to the disability claim.  See id.

25.     Here, Plaintiff simply failed to submit documents in support of his claims. The ALJ's intervention was not necessary to develop and complete the administrative record:  *Plaintiff had the Heartbeat Center records in his possession.*  (R. at 43.)  He brought them to the hearing.  Id.  Counsel had them.  (R. at 44.)  She asked that she be permitted to submit them.  Id.  The ALJ granted that request, despite it being untimely, and afforded counsel time to submit them electronically.  (R. at 44-45.)  The ALJ then held the record open for months—at counsel's request—for counsel to do so.  But she never did.

26.     Plaintiff's several arguments are unpersuasive.  He first faults the ALJ for failing to explain why the Heartbeat Center records were not admitted into the record, but that explanation is clear:  Plaintiff's counsel failed to submit them as directed.  He further maintains that the ALJ "recognized the importance of these documents" by subpoenaing them and then erred by failing to enforce the subpoena after no response was received.  Neither is the case.  The subpoena was a gratuitous act in light of counsel's possession of the very documents subject to subpoena, and it was Plaintiff's counsel, not the ALJ, who characterized the records as "critical."   (R. at 42.)   In any event, under the circumstances, this Court finds no abuse of discretion in the ALJ's failure to enforce the subpoena for records known to be in Plaintiff's possession.

27.     While this Court fully understands and appreciates the intent and purpose of obligating the ALJ to assist in developing the administrative record, that obligation does not entirely supplant a claimant's obligation to diligently prosecute his or her case.  Given the demonstrated lack of diligence here, finding error would push the ALJ's obligation beyond its bounds.  Plaintiff's arguments are therefore rejected.

28.     Next are the documents not in Plaintiff's possession, those from Dr. Liu-Chen and Buffalo General Hospital.  The ALJ directed Plaintiff's counsel to obtain and submit these documents, but Plaintiff's counsel failed to do so without explanation.  "When an unsuccessful claimant files a civil action on the ground of inadequate development of the record, the issue is whether the missing evidence is significant.  The plaintiff in the civil action must show that he was harmed by the alleged inadequacy of the record[.]"  Santiago v. Astrue, No. 3:10CV00937 (CFD), 2011 WL 4460206, at *2 (D. Conn. Sept. 27, 2011) (citation omitted); see also Lena v. Astrue, No. 3:10CV00893

13

(SRU), 2012 WL 171305, at *9 (D. Conn. Jan. 20, 2012) ("To demonstrate prejudice [plaintiff] must show that the additional medical reports would undermine the ALJ's decision." (citation and quotation marks omitted)).

29.     Beyond noting that updated records from Dr. Liu-Chen and Buffalo General Hospital were not received into the record, Plaintiff presents no arguments concerning their significance, no explanation for why their absence rendered the record inadequate, and no showing that these records would undermine the ALJ's decision.  The ALJ fully considered Plaintiff's heart condition, including Plaintiff's testimony that he went to Buffalo General Hospital when he had his heart attack, but no surgery or other procedures were performed there.   (R. at 14-16.)   Instead, he was treated with diet changes and medication. Id.  Presumably the hospital records would mirror Plaintiff's testimony.  The ALJ also considered evidence of Plaintiff's primary care provided by Dr. Liu-Chen (but for the most recent February 2019 records).  Despite Plaintiff's testimony that he directed his cardiac concerns to his cardiologist, see R. at 69, Dr. Liu-Chen's records provided information on Plaintiff's post-heart attack condition from which the ALJ could assess Plaintiff's limitations.  (R. at 16.)  Plaintiff makes no claim that anything in the February 2019 visit records would undermine the ALJ's finding in this regard.  Consequently, this Court rejects Plaintiff's argument that the ALJ failed to adequately develop the record.

30.     Plaintiff's remaining challenge to the ALJ's decision is that it is unsupported by substantial evidence because the ALJ ignored his treating physician's determination that he lost 20% use of his hands when the ALJ found that Plaintiff could frequently handle, finger, and feel objects with both hands.  (R. at 14.)  Michael T. Grant, M.D., Plaintiff's treating orthopedic surgeon, examined Plaintiff on April 6, 2017, and opined that

under Workers' Compensation guidelines, Plaintiff had "scheduled loss of use of each hand [of] 20 percent."  (R. at 439.)  While the ALJ considered Dr. Grant's treatment notes and records, he did not specifically articulate his consideration of this 20-percent loss opinion.  (R. at 20.)

31.    This Court finds no error in the ALJ's consideration of Dr. Grant's opinion for several reasons.  First, an ALJ is not obligated to discuss every piece of evidence in the record.  See Todd E. O. v. Comm'r of Soc. Sec., No. 5:20-CV-1046 (CFH), 2022 WL 326629, at *11 (N.D.N.Y. Feb. 3, 2022) (finding no error where ALJ failed to discuss opinion evidence because "[t]he ALJ [i]s not required to mention or discuss every single piece of evidence in the record" (alterations in original; citation omitted)).  Second, Dr. Grant's opinion predates Plaintiff's July 17, 2017 amended onset date.  Third, even assuming a 20% loss, Plaintiff testified that he continued to work after this opinion was rendered, and stopped only due to his heart attack, not his carpal tunnel syndrome.  (R. at 56.)  Fourth, an opinion rendered for Workers' Compensation purposes, using Workers' Compensation standards, is not binding on the Commissioner.  See 20 C.F.R. § 404.1504; cf. Monette v. Colvin, 654 F. App'x 516, 518 n. 3 (2d Cir. 2016) (summary order).  And finally, Dr. Grant's opinion is actually consistent with the ALJ's finding that Plaintiff could "frequently handle, finger and feel objects with his left and right hand[s]," since "frequently" is generally defined as anywhere between one-third and two-thirds of the time, and Dr. Grant found that Plaintiff had use of his hands 80% of the time.  See, e.g., SSR 83-14, 1983 WL 31254, at *2 (defining "frequently").  Consequently, this Court rejects Plaintiff's contention that this portion of his RFC is unsupported by substantial evidence.

32.     Accordingly, having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds that it is free from legal error and supported by substantial evidence.  It is therefore affirmed.  See Grey, 721 F.2d at 46; Marcus, 615 F.2d at 27. Plaintiff's motion for judgment on the pleadings is denied, and Defendant's motion seeking the same relief is granted.


        IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 11) is DENIED.

        FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 12) is GRANTED.

        FURTHER, that the Clerk of Court is directed to CLOSE this case.

        SO ORDERED.


Dated:          February 23, 2022
                Buffalo, New York

                                        s/William M. Skretny
                                       WILLIAM M. SKRETNY
                                       United States District Judge